**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210143-U

Order filed October 13, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| AIRY'S INC., an Illinois Corporation, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| MARVIN HILL; CATAWBA LEASING INC., | ) | |
| an Illinois Corporation; and HILL COMPANY, | ) | |
| an Illinois General Partnership, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | Appeal No. 3-21-0143 |
| | ) | Circuit No. 19-MR-707 cons. w/ |
| MARVIN HILL, AIRY'S INC., an Illinois | ) | 19-CH-865 |
| Corporation through MARVIN HILL, a | ) | |
| Minority Shareholder, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN HILL, AIRY'S INFRASTRUCTURE, | ) | |
| LLC, and AIRY'S PROPERTY, LLC, | ) | |
| | ) | Honorable John C. Anderson, |
| Defendants-Appellants. | ) | Judge, Presiding |

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice McDade and Justice O'Brien concurred in the judgment.

**ORDER**

¶ 1      *Held*:   In these consolidated proceedings, the trial court did not abuse its discretion by partially granting Marvin Hill's motion to appoint a receiver for Airy's, Inc.

¶ 2      This appeal involves Will County consolidated case Nos. 19-MR-707 and 19-CH-865, which were filed by Ryan Hill and Marvin Hill, respectively, over disputes relating to the ownership and control of Airy's Inc. (Airy's). Airy's is an underground plumbing and sewer construction company. Marvin and Ryan, who are father and son, are shareholders in Airy's. The trial court partially granted Marvin's motion to appoint a receiver for Airy's. Ryan appeals.

¶ 3                          I. BACKGROUND

¶ 4      Airy's is an underground plumbing and sewer construction company that was founded in 1965. Marvin became Airy's sole shareholder in 1990. On January 2, 2018, Marvin allegedly transferred 61 of his Airy's shares to Ryan. The transfer allegedly made Ryan the majority shareholder (51% of shares) and Marvin the minority shareholder (49% of shares) in Airy's. The transfer of shares to Ryan, who is a military veteran, allegedly occurred in order for Airy's to receive benefits, as a veteran-owned business, from a long-standing customer.

¶ 5      On March 11, 2019, Ryan, on behalf of Airy's and as Airy's majority shareholder, filed Will County case No. 19-MR-707 against Marvin and his associated companies, Catawba Leasing, Inc. (Catawba), and Hill Company. Thereafter, on June 10, 2019, Marvin, on behalf of Airy's and as Airy's minority shareholder, filed Will County case No. 19-CH-865 against Ryan, Airy's Infrastructure, LLC, and Airy's Property, LLC. Each case alleged wrongdoing by Marvin and Ryan in relation to Airy's, so the lawsuits were consolidated on June 17, 2019.

¶ 6      On December 11, 2020, Marvin filed a motion to appoint a receiver for Airy's, which was supported by Marvin's affidavit and other exhibits. Marvin argued the transfer of Airy's shares to Ryan was fraudulent or, alternatively, void and of no force or effect. Marvin invoked

2

sections 12.56 and 12.60 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56, 12.60 (West 2020)), which pertain to remedies and practices in action available to shareholders of a nonpublic corporation. Under those provisions, Marvin argued Ryan illegally, oppressively, and fraudulently deprived him of his rights, as either the sole shareholder or the minority shareholder in Airy's, to notice of and participation in meetings and votes under Airy's bylaws.

¶ 7       Specifically, Marvin alleged Ryan, without corporate authority, barred Marvin from Airy's premises; changed and then restricted Marvin's access to Airy's business accounts; refused to allow Marvin to inspect and review Airy's corporate records, including those related to Airy's income and expenses, acquisition of real estate, loans, and employee compensation; formed additional legal entities using the "Airy's" name without consulting Marvin or allowing him to access and review those legal entities' corporate records; allocated Airy's corporate assets for personal use, including for legal expenses; made unauthorized corporate tax elections, depriving Marvin of shareholder distributions; refused to authorize distributions to Marvin; deviated from Airy's business contracts to the benefit of other legal entities; and, violated his duty of loyalty by usurping Airy's corporate opportunities. Marvin also alleged the transfer of shares to Ryan was void since, before January 2018, Marvin transferred 100% of Airy's shares to Catawba. For these reasons, Marvin requested, *inter alia*, the appointment of a receiver "to take immediate custody and control of *** [Airy's] for the purpose of managing the business and affairs of the corporation for a term and under the conditions prescribed by the court."

¶ 8       On February 4, 2020, Ryan filed a response to Marvin's motion to appoint a receiver for Airy's, which was supported by Ryan's affidavit and other exhibits. Ryan argued Marvin's allegations were conclusory, unsubstantiated or refuted by the record, and insufficient to warrant the appointment of a receiver. Further, Ryan argued a receiver would destroy Airy's business,

3

which was allegedly operating better than it had been in the past. Ryan stated, if a receiver became involved in Airy's business operations, then Airy's would lose its "veteran-owned" status and default on certain contractual obligations. Ryan also argued his lawsuit was necessary to prevent Marvin from destroying Airy's business operations. In support of this argument, Ryan alleged Marvin transferred over $243,000 from Airy's accounts to Hill Company's accounts; threatened relationships with Airy's customers, vendors, employees, and subcontractors; cancelled Airy's credit cards and lines of credit; contacted law enforcement and a locksmith to forcibly enter and remove Airy's from its office; and, used corporate funds to pay for a lavish lifestyle. Ryan also attested that he "sent notice of all Director, Shareholder, and Officer meetings to Marvin Hill, and since the outset of this litigation he ha[d] chosen not to attend."

¶ 9        On February 16, 2021, Marvin filed a reply in support of his motion to appoint a receiver for Airy's. Attached to the reply was an affidavit from Marvin's attorney. Marvin's attorney attested, even though the parties agreed to a review of Airy's business records, "the boxes [made available by Ryan] contained outdated and unrelated contracts, invoices, payroll records, and other communications. Virtually all documents relating to the current operations of the company were withheld from our review." Similarly, Marvin's attorney attested, "[t]o date, we have not been granted access to the current corporate books or records, nor have we been allowed to view documents which demonstrate the current financial status of *** Airy's or its current debts, liabilities, and expenditures." Marvin's attorney also attested that he was not "allowed to view any such documents for any of the newly-formed [Airy's] related corporate entities."

¶ 10        On February 18, 2021, the trial court held a hearing on Marvin's motion to appoint a receiver for Airy's. After receiving arguments, the trial court took the matter under advisement and ordered each party to submit a proposed order for its approval. On March 8, 2021, the trial

court adopted the proposed order submitted by Marvin, which partially granted Marvin's motion to appoint a receiver for Airy's under the Act. In the adopted order, the trial court found the evidence "indicat[ing] *** [Airy's] [wa]s both financially sound and not at imminent risk of any harm with respect to its performance or profits" carried "significant weight." Nonetheless, the trial court found it could not "ignore the portions of *** [Marvin's] Motion to which Ryan did not respond," namely, that Ryan "failed to call meetings and hold votes as required by Airy's by-laws" and "circumvent[ed] th[ose] corporate obligations" as Airy's manager and director.

¶ 11    Further, the trial court found the evidence submitted by Marvin "demonstrate[d] that Ryan's purported willingness to share information about Airy's with Marvin *** or Catawba *** ha[d] fallen short." While Marvin's representatives were provided access to specific premises and documents, it could not "be said [that] they were given either (1) all they requested, or (2) all that a shareholder [wa]s entitled to view." To the contrary, the "specific documents of relevance and import to this litigation were not present in the voluminous documents that were presented to Marvin's representatives" and, in fact, were "previously attested to be stored in an entirely separate location." The trial court concluded Ryan's "restriction of access to the financial and operating documents of Airy's [wa]s akin to [his] operation of the company as a sole proprietorship, in violation of [Ryan's] corporate obligations and *** duties as director."

¶ 12    As a result of these factual findings, the trial court "appoint[ed] a receiver with powers limited to access[ing], review[ing], possess[ing], and control[ling] the documents and information pertaining to Airy's finances and operations, such that th[e] receiver [could] provide transparency to all parties, to all shareholders, and to the Court." (Emphasis in original omitted.) Specifically, the receiver was granted the power to review, possess, and control access to all paperwork, documents, and records related to Airy's loan agreements, payroll, taxes, and

5

corporate decision-making since January 1, 2018. With these limited powers, which were "not intended to be limited by semantics or technical jargon," the receiver was empowered to provide transparency and enforce shareholder rights without granting additional rights to the parties.

¶ 13    In addition, the trial court found there was "insufficient evidence *** to potentially disrupt the current operations of [Airy's] and the manner in which [its] assets" were managed. Therefore, the trial court expressly restricted the receiver's power to "[c]onduct, refuse, engage in, manage, or otherwise affect any business on behalf of or with Airy's" or to "[s]ell, dispose of, destroy, convert, donate, or otherwise affect any corporate assets of Airy's."

¶ 14    On April 6, 2021, Ryan filed a timely appeal under Illinois Supreme Court Rule 307(a)(2) (eff. Nov. 1, 2017), which allows interlocutory appeals following the appointment of a receiver.[1]

¶ 15                                II. ANALYSIS

¶ 16    On appeal, the sole issue is whether the trial court erred by partially granting Marvin's motion to appoint a receiver for Airy's. The parties present substantially the same arguments as they did in the trial court. Ryan argues the trial court failed to apply the stringent standard for appointing a receiver. As support, Ryan claims he denied or rebutted, with exhibits and sworn affidavits, Marvin's allegations relating to the necessity of a receiver. Ryan posits, in light of the undisputed fact that Airy's is currently financially and operationally viable, "there [wa]s no possible basis for the trial court to grant Marvin's motion." Ryan states the need for transparency or to avoid misconduct and dissension are insufficient bases on which to appoint a receiver.

¶ 17    In response, Marvin argues the trial court was within its discretion to recognize "the statutorily enumerated grounds for the appointment of a receiver," namely, "the undeniable oppression of shareholder rights." Marvin maintains that the trial court "took the measured step

---

[1]Ryan filed his notice of appeal on behalf of himself, Airy's, and Airy's Property, LLC.

of appointing a limited receiver" after receiving unrefuted evidence that Ryan violated Airy's bylaws when he failed to call shareholder meetings and denied shareholders access to Airy's corporate books. As a result, Marvin argues, even if there was insufficient evidence of "financial waste" by Ryan, as Ryan contends, the trial court could still appoint a receiver for Airy's.

¶ 18 Pertinently, section 12.56(a)(3) and (4) of the Act provides:

"(a) In an action by a shareholder in a [non-public] corporation ***, the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that:

* * *

(3) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer; or

(4) The corporation assets are being misapplied or wasted." 805 ILCS 5/12.56(a)(3)-(4) (West 2020).

Consistent with this statutory language, our supreme court has found, when a plaintiff seeks relief for "illegal, oppressive, or fraudulent" conduct or the misapplication or wasting of corporate assets, he or she must establish that the defendant engaged in the alleged statutory misconduct. *Schirmer v. Bear*, 174 Ill. 2d 63, 74-75 (1996); accord *Lozman v. Putnam*, 328 Ill. App. 3d 761, 766 (2002); see 805 ILCS 5/12.56(a)(3)-(4) (West 2020). If "the predicate misconduct is established, [then] the court may, in its discretion, determine which, if any, remedy is equitable and appropriate for plaintiff under the statute." *Schirmer*, 174 Ill. 2d at 75.

7

¶ 19 Once "the predicate misconduct is established" as provided by section 12.56(a), the trial court may consider the available remedy under section 12.56(b), which, in pertinent part, states:

> "(b) The relief which the court may order in an action under subsection (a) includes but is not limited to the following:
>
> * * *
>
> (6) The appointment of a custodian to manage the business and affairs of the corporation to serve for the term and under the conditions prescribed by the court." 805 ILCS 5/12.56 (b)(6) (West 2020).

Importantly, the remedies listed in section 12.56(b) are not "exclusive of other legal and equitable remedies which the court may impose." *Id*. § 12.56(c). When fashioning relief under section 12.56(b), the trial court "may take into consideration the reasonable expectations of the corporation's shareholders as they existed at the time the corporation was formed and developed during the course of the shareholders' relationship with the corporation and with each other." *Id.* § 12.56(d).

¶ 20 Moreover, section 12.60 of the Act specifies the practice in action of the nonpublic corporate shareholder referenced in section 12.56(a). See *id*. § 12.60. Section 12.60(d) provides:

> "(d) The circuit court in an action under Section *** 12.56 may issue injunctions, appoint an interim receiver with such powers and duties as the court, from time to time, may direct, and take such other action as is necessary or desirable to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had. Section[] *** 12.56 shall not be construed as limiting the equitable powers of the court in ordering interim or permanent relief." *Id.* § 12.60(d).

¶ 21     Under these provisions, the case law states, generally, a receiver may be appointed if (1) the directors are managing or disposing of business or assets to serve their own interests, such that the business or assets will be lost or destroyed before a decision is reached on the merits; (2) internal dissensions are deadlocking the corporation and frustrating or threatening its purpose or objectives; (3) the directors' failure or refusal to meet and transact business is jeopardizing shareholder interests; or, (4) other conditions of dissension, dispute, fraud, or mismanagement make it impossible for the corporation to carry on its business or preserve its assets. *Witters v. Hicks*, 338 Ill. App. 3d 751, 756 (2003) (*Witters* I) (citing *Firebaugh v. McGovern*, 404 Ill. 143, 149 (1949)). Further, as the Act suggests, the appointment of a receiver is reviewed for an abuse of discretion. See *Witters v. Hicks*, 335 Ill. App. 3d 435, 440-41 (2002) (*Witters* II); *Poulakidas v. Charalidis*, 68 Ill. App. 3d 610, 613-14 (1979). As such, we review whether the trial court "acted arbitrarily [and] without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law," resulting in substantial prejudice. *Kaden v. Pucinski*, 263 Ill. App. 3d 611, 618 (1994); accord *Estate of Bass ex rel. Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007); see also *Enbridge Energy, Limited Partnership v. Fry*, 2017 IL App (3d) 150765 ¶ 54. Since this appeal is interlocutory in nature, our court decides whether a "sufficient showing" was made to sustain the trial court's decision to grant the relief requested by Marvin. *Bass*, 375 Ill. App. 3d at 67.

¶ 22     However, even under the Act, the appointment of a receiver has been found to be "an extraordinary and drastic remedy" that is appropriate only in cases of "urgent necessity," which means there is a present danger to the interests of investors that consists of "a serious suspension of the business and an imminent danger of waste or dissipation of corporate assets." *Witters* II, 335 Ill. App. 3d at 440 (citing *Poulakidas*, 68 Ill. App. 3d at 614); see also *Prassas v. Nicholas*

9

*W. Prassas & Co.*, 102 Ill. App. 3d 319, 321-22 (1981). In *Poulakidas* and *Prassas*, which were decided before the enactment of the current version of the Act and not in the context of a predecessor statute, a court of equity was said to have the power to appoint a receiver only when dissension, dispute, fraud or mismanagement existed, making it impossible for the business to continue or to preserve its assets. See *Poulakidas*, 68 Ill. App. 3d at 614; accord *Prassas*, 102 Ill. App. 3d at 321-22. In those cases, the courts recognized that a receiver operates in derogation of fundamental property rights, impairs the corporation's credit, interferes with corporate management, and imposes an onerous duty of corporate management on the trial court. *Poulakidas*, 68 Ill. App. 3d at 615; *Prassas*, 102 Ill. App. 3d at 322. Further, in those cases, this standard was said to apply even if the receiver was temporary or limited in purpose. *Poulakidas*, 68 Ill. App. 3d at 614; *Prassas*, 102 Ill. App. 3d at 322.

¶ 23　　　　　Following our careful review of the record and application of the controlling legal authorities, we conclude, even under the stringent standard articulated above, the trial court was within its discretion to grant Marvin's motion to appoint a receiver for Airy's. At a minimum, the trial court received and was ultimately persuaded by evidence demonstrating that Ryan oppressively deprived Marvin of his rights, as either the sole shareholder or as a minority shareholder in Airy's, under section 12.56(a)(3). See 805 ILCS 5/12.56(a)(3) (West 2020); *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill. 2d 208, 214-215 (1960) (stating, under the Act's predecessor statute, "the word 'opressive' [*sic*] *** does not carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct *** and the absence of 'mismanagement[] or misapplication of assets[]' does not prevent a finding that the conduct of the dominant directors or officers ha[ve] been oppressive."). The trial court received affidavits from Marvin and Marvin's attorney that demonstrated Ryan took corporate actions, without the

participation of Marvin as the undisputed sole shareholder or minority shareholder in Airy's, in corporate meetings and votes. The trial court was also persuaded by evidence indicating Marvin was not provided with all of the corporate records that he requested or was entitled to receive.

¶ 24     Once Marvin established misconduct under section 12.56(a)(3), the trial court was within its discretion to appoint a limited receiver under sections 12.56(b)(6) and 12.60(d). 805 ILCS 5/12.56(b)(6), 12.60(d) (West 2020). The language used in those provisions gives the trial court broad discretion to fashion remedies for section 12.56(a) violations. Section 12.56(b), which is not "exclusive of other legal and equitable remedies which the court may impose," states, "[t]he relief which the court *may order* in an action under subsection (a) *includes but is not limited to* \*\*\* [t]he appointment of a custodian to manage the business and affairs of the corporation to serve for *the term and under the conditions prescribed by the court*."[2] (Emphasis added.) 805 ILCS 5/12.56(b)(6), (c) (West 2020). Likewise, section 12.60(d) states, "[t]he circuit court in an action under Section \*\*\* 12.56 *may* \*\*\* *appoint* an interim receiver *with such powers and duties as the court, from time to time, may direct*, and take such other action as is necessary or desirable to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had." (Emphasis added.) 805 ILCS 5/12.60 (West 2020). This exceedingly deferential language clearly indicates the trial court acted within its discretion to "appoint[] a receiver with powers limited to access[ing], review[ing], possess[ing], and control[ling] the documents and information pertaining to Airy's finances and operations." Indeed, by limiting the receiver's powers, the trial court assuaged the traditional concerns related to the appointment of a receiver. See *Poulakidis*, 68 Ill. App. 3d at 615; *Prassas*, 102 Ill. App. 3d at 322.

---

[2]We note that, although section 12.56(b)(6) references a "custodian" and not a "receiver," section 12.60(h) states: "[d]uring the pendency of the action [under section 12.56], the court may redesignate a receiver as a custodian, or a custodian as a receiver, if such would be to the general advantage of the corporation, its shareholders and its creditors." 805 ILCS 5/12.60(h) (West 2020).

¶ 25　　　　For these reasons, we reject Ryan's contention in this interlocutory appeal that "there [wa]s no possible basis for the trial court to grant Marvin's motion." Based on this record, we cannot conclude that the trial court acted arbitrarily, without the employment of conscientious judgment, unreasonably, or in defiance of recognized principles of law. See *Kaden*, 263 Ill. App. 3d at 618; accord *Bass*, 375 Ill. App. 3d at 67; *Enbridge Energy*, 2017 IL App (3d) 150765 ¶ 54. To the contrary, it is entirely plausible that a reasonable person would deem the appointment of a limited receiver necessary while the trial court addresses the parties' competing allegations and resolves the merits of each lawsuit.

¶ 26　　　　As an aside, we caution that our resolution of the narrow issue presented on appeal should not be construed as an indication of this court's view on the merits of Ryan and Marvin's deeply contentious lawsuits. This order merely holds that the trial court did not abuse its discretion by appointing a limited receiver for Airy's under the Act.

¶ 27　　　　　　　　　　　　　　III. CONCLUSION

¶ 28　　　　The judgment of the circuit court of Will County is affirmed.

¶ 29　　　　Affirmed.

12